Application of O'NEILL et al.

No. 137–L.

United States District Court.  D. Alaska.
First Division.  Juneau.
Oct. 7, 1948.

Faulkner, Banfield & Boochever, of Juneau, for applicants O'Neill and Fenton.

M. G. Monagle, of Juneau, for applicant Marie Shipp.

FOLTA, District Judge.

Following a denial thereof earlier in the year for failure to obtain the consent of a majority of the residents as required by Section 3, Chapter 78, S.L.A.1937, applicants have renewed their application for a retail liquor license at Baranof, Alaska. Their application was consolidated for the purpose of the hearing with that of Marie Shipp who applied for the same kind of license at Baranof in her name after an earlier application by her husband had been denied. The hearing soon took on the appearance of an adversary proceeding with each applicant charging the other with violations of the liquor laws committed while operating under licenses previously granted for their establishments at Baranof and with a lack of qualifications, with particular reference to moral character.

Baranof is an isolated community with a permanent population of approximately ten persons but, because of the presence of mineral springs with the usual bathing facilities and the harbor which affords ample protection and accommodations for small fishing vessels, it attracts a transient population consisting principally of trollers which may at times equal or exceed the permanent population. It was the residence status of these trollers that furnished the principal

subject of the controversy. The evidence on this point tended to show that certain trollers made Baranof their headquarters while not engaged in fishing, trapping, or related activities, and that during such periods a few of them lived ashore and in their absence from Baranof stored some of their personal effects there.

Upon the conclusion of the hearing the application of Marie Shipp was denied on the ground that she had participated with her husband, who was previously licensed, in the unlawful sale of liquor.

The question whether the remaining applicants, O'Neill and Fenton, are entitled to a license involves the consideration of certain provisions of Chapter 78, S.L.A.1937. Section 3 of that statute provides:

"That before any license is granted, as provided in this Act, it shall be shown to the satisfaction of the Court that a majority of the citizens over the age of twenty-one years, residing within two miles of the place where intoxicating liquor is to be manufactured, bartered, sold and exchanged, or bartered, sold or exchanged, have in good faith consented to the manufacture, barter, sale and exchange, or the barter, sale and exchange of the same; and the burden shall be upon the applicant or applicants to show to the satisfaction of the Court that a majority of the citizens over twenty-one years of age have consented thereto and no license shall be granted in the absence of such evidence; provided, that when it is made to appear that a majority of said citizens over the age of twenty-one years of any one place have consented to the manufacture, barter, sale and exchange or the barter, sale and exchange of intoxicating liquor, no further proof of the consent of the citizens of the place where such intoxicating liquor is to be manufactured, bartered, sold and exchanged, or bartered, sold and exchanged, will be required for twelve months thereafter."

At the outset it is argued on behalf of the applicants O'Neill and Fenton that all that the law requires is that it

be shown that a majority of the residents had at some time within the preceding twelve months, either in connection with the instant or some other application or independently thereof, consented to the sale of liquor at Baranof. While this may be permissible as a strained construction of Section 3, considered by itself, other provisions militate against this view. Thus, Section 4 plainly contemplates that such a consent accompany each application. Moreover, there is not only an entire absence of any provision for obtaining the consent of residents in an independent proceeding for the purpose of relieving each applicant of the necessity of obtaining such consent anew but it is obvious, since the two mile radius referred to in Section 3 would differ substantially in most cases, that to give the statute such a construction would be to ignore the provision requiring the consent of the majority of those residing within two miles of the place for which a license is sought.

A further consideration supporting this view of the law is that it is unreasonable to impute to the Legislature the intent to deny to the residents affected the right to take into consideration the identity and character of the applicant and thus limit him solely to a consideration of the question whether liquor should be sold within the area of his residence. His right to consent or object is predicated on the possibility that the presence of a liquor establishment within the area of his residence might adversely affect him in the enjoyment of his property or otherwise. It would, therefore, seem quite clear that the manner in which a liquor establishment is conducted has a far greater potentiality for harm or interference than the mere sale of liquor therein.

I conclude, therefore, that the consent of a majority of the residents must be submitted with each application, from which it follows that the names of those who consented to the sale of liquor by the applicant Marie Shipp cannot be used to make up any deficiency in the list of those who consented to the sale of liquor by the applicants O'Neill and Fenton, or vice versa.

■ The next question is whether the applicants, O'-Neill and Fenton, have obtained the consent of a majority of the residents. For the reasons already stated the Court holds that the statute requires the consent of actual residents, regardless of whether they own property, as distinguished from domiciliaries who reside elsewhere and who own no property within the statutory radius of the place for which a license is sought. Of course, the ownership of property is not a prerequisite to the establishment or maintenance of a domicile, but cogent reasons exist for the construction here adopted. Ordinarily domiciliaries residing elsewhere, even though substantial in number, do not possess the power to affect the enjoyment of property by actual residents of the place of their asserted domicile. Here, however, itinerant fishermen and others, by the mere claim of domicile at Baranof, would be able to control the sale of liquor there without regard to the wishes of the actual residents of Baranof and perhaps to their great prejudice.

■ In the argument the Court's attention was directed to the desirability of adhering to the precedent established by my predecessor in holding that no more than one license should be issued for the sale of liquor at Baranof. Undoubtedly the Court was influenced by the dereliction of the Legislature in authorizing the sale of liquor in isolated unincorporated communities and taking the revenue therefrom without providing any semblance of police protection. Sympathetic as I am with such a view, I am unable to agree that the Court is empowered to impose limitations of this kind.

From an examination of the evidence in the light of the foregoing views, I am constrained to hold that Edgar Jones, Laura Gamble, Frank W. Barr, Fred Bahovec, Mrs. Fred Bahovec, Corbett Shipp, Mrs. Corbett Shipp, and the applicants Fred M. O'Neill and Sarah Fenton are the only actual residents of Baranof within the Act. Of the foregoing the applicants O'Neill and Fenton have obtained the consent of one only. The application is, therefore, denied.